# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARLIN OIL CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | NO. CIV-09-0482-HE |
| ) | |
| RONALD LURIE, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Marlin Oil Corporation ("Marlin") is the operator of an oil and gas well, the Leonard No. 1, located in Beaver County, Oklahoma. In this case, it seeks to recover what it alleges were mistaken overpayments to one of the working interest owners in the well, defendant Ronald Lurie. Marlin has moved for summary judgment, to which defendant has responded and plaintiff has replied.[1] Defendant Lurie has also moved for reconsideration of the court's prior order awarding certain attorney's fees in connection with discovery issues and for reconsideration of the court's order denying defendant leave to amend his counterclaim to assert a claim for breach of fiduciary duty.[2]

### Background

The facts pertinent to the disposition of this case are essentially undisputed. Since at least November 1978, Marlin was the operator of the well pursuant to an operating

---

[1] *The motion was filed as one for partial summary judgment. However, as the court has since disposed of the additional claims of plaintiff not addressed in the motion (Order, June 30, 2010, Doc. #50), the present motion goes to all remaining claims.*

[2] *As noted previously (Order, June 30, 2010, p. 2 n. 3), defendant Lurie is proceeding pro se in this case, but is a lawyer by training. As such, his submissions are not subject to the deferential treatment ordinarily afforded pro se filings.*

agreement. In July 1980, defendant Lurie obtained by assignment from a prior owner a 3.071349% working interest in the well and a net revenue interest of 2.36502%. At some point, production difficulties with the well were encountered and Marlin decided to rework the well. Defendant Lurie elected not to participate in the rework and to go "non-consent." Under the operating agreement, Marlin was entitled to recover 300% of its costs in connection with the rework before putting Lurie back in "pay status" for further revenue distributions, and did so. In May 2006, apparently at the point where Lurie was shifted back into pay status, an error was made by Marlin in entering the necessary data into its computer records and/or payment system.[3] The error substantially overstated defendant's interest in the well, inflating his working interest to 24.46394% and his net revenue interest to 19.006109%. This resulted in overpayments to defendant, during the period from May 2006 through December 2008, of $163,327.96 and in him being overbilled for expenses in the amount of $27,702.61. On a net basis, defendant was overpaid by $135,625.35 during the period. Plaintiff brought the overpayments to Lurie's attention in early 2009, confirming that with an April 2, 2009, letter and supporting documentation. Lurie did not agree to pay back the alleged overpayments and this lawsuit to recover them followed.

## Discussion

The standard applicable to motions for summary judgment is familiar. Summary judgment should be granted where — in light of the pleadings, discovery materials, and any

---

[3]*It is unclear as to who made the error or exactly how it was made, but there is no dispute the percentage interests entered were incorrect.*

2

affidavits — there is no "genuine issue" as to any "material fact" and the movant is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(c)(2). The court must review the evidence, and draw all reasonable inferences therefrom, in the light most favorable to the nonmoving party. In re Wal-Mart Stores, Inc., 395 F.3d 1177, 1189 (10th Cir. 2005). The court may not make determinations of credibility nor weigh evidence, and must disregard all evidence favorable to the movant that the trier of fact would not be required to believe. Gossett v. Oklahoma, 245 F.3d 1172, 1175 (10th Cir. 2001). Mere conclusory allegations, without evidentiary support, do not create a genuine issue of fact. L&M Enters., Inc. v. BEI Sensors & Sys. Co., 231 F.3d 1284, 1287 (10th Cir. 2000).

Here, plaintiff seeks recovery of the alleged overpayments based on theories of unjust enrichment and breach of contract. With respect to each, it alleges that Oklahoma law applies, noting the location of the well, the dealings between the parties, the place and manner of payment, and the like were in Oklahoma. Defendant does not take issue with plaintiff's suggestion that Oklahoma law provides the rule of decision and the court concurs.

Oklahoma law recognizes that overpayments of royalty and similar amounts may be recovered from the payee where the overpayments were due to a mistake of fact. The principle was recognized in Shanbour v. Phillips 66 Natural Gas Co., 864 P.2d 815, 817 (Okla. 1993), a case which involved an overpayment of royalties, but the court explicitly noted the rule was not limited to royalties: "This rule is well established, and does not apply

simply to overpayments of royalty." *Id.*[4] The court concludes this rule applies to production payments such as are involved in this case.

Here, it is clear that the payments to Lurie were made due to a mistake of fact — a mistake in stating his percentage interest in the well and hence in the production payments made based on that erroneous interest. Defendant has not presented any evidence to controvert the central basis for plaintiff's claim — that the payments to him and the expenses billed to him were based on a mistake. In particular, he offers nothing to dispute plaintiff's evidence as to the percentage interest in the well which defendant actually owned, based on his acquisition of a working interest in it, versus the percentages used in computing his payments during the disputed period. Defendant does point to a number of facts which he suggests impact this in some way, but none of them ultimately put in issue the fact that the payments were made by mistake. He offers evidence that he contacted Marlin personnel (Ms. Gibson) in May or June of 2006, inquiring about the basis for his check, and that she gave no indication the check was in error. However, the evidence does nothing more than indicate Gibson did not discover any problem based on whatever inquiry she made. It does not provide a basis for suggesting the payments to him were accurate or that plaintiff somehow knew about the incorrect amounts and kept paying him anyway. Similarly, Mr. Lurie points to a May 2006 joint ownership listing prepared by Marlin showing Lurie's net

---

[4]*See also:* Continental Oil Co. v. Rapp, 301 P.2d 198, 201-02 (Okla. 1956); Haubert v. Navajo Refining Co., 264 P. 151, 152 (Okla. 1928); Nelson v. Midcontinent Expl. LLC, 228 P.3d 533, 535 (Okla. Civ. App. 2009).

revenue interest at the incorrect 19-plus percent level. In the absence of any dispute as to the interest actually acquired by Lurie in the well, such evidence does nothing more than document that certain of Marlin's records were wrong. Mr. Lurie also cites to his own deposition testimony as support for the proposition that he did not know the payments were in error. But the basis for plaintiff's claim is not that defendant owes the overpayments because of something he knew — the basis is that the payments were incorrect and were based on plaintiff's mistake in making them.[5] Mr. Lurie also points to evidence that plaintiff had a two-signature policy as to its checks and that sometimes it did not follow it. He argues that, if plaintiff had followed its own policy, the mistaken overpayments would not have occurred. That assertion is pure speculation, but even if true it does not matter. There are no doubt many things that plaintiff might have done to discover its mistake sooner. Someone could have been more careful in making the initial computation of post-workover interests. Someone could have been more careful in entering the data into the computer. Someone might have done an audit which might have caught the mistake sooner. And, as defendant argues, maybe the person putting the "second signature" on the run checks might have noticed something. But such arguments misconstrue the basis for plaintiff's claims. The fact that plaintiff may have been negligent in computing the interests or making the payments

---

*[5]Also unpersuasive is defendant's apparent suggestion that the acts of paying him were advertent acts, rather than inadvertent acts, and that this somehow undercuts any basis for recovery that would otherwise exist. Obviously, someone took the volitional act of cutting a check to Lurie, putting it in an envelope, mailing the envelope, and such. But the fact that such deliberate acts were taken on Marlin's behalf does not undercut the fact that they were based on an underlying mistake of fact.*

5

does not bar recovery under the rule. As the Tenth Circuit noted in Mid-Continent Petroleum Corp. v. Sawyer, 236 F.2d 518, 521 (10th Cir. 1956), discussing the law generally as to the impact of a mistake of fact:

> Doubtlessly, Mid-Continent officials who negotiated the compensatory agreement negligently failed to examine or inform themselves of the exonerating provisions in the lease. But even so, restitution, based on mistake of fact, will not be denied because of forgetfulness of once known facts or negligent failure to ascertain the true facts (citing cases).
> ...
> Indeed, the essence of the equitable doctrine of restitution for mistake of fact is frequently founded in "unconscious ignorance" or forgetfulness of material facts which could have been remedied by the exercise of due care. (Emphasis added.)

In short, the fact that the mistake of fact might have been avoided or discovered earlier by more diligence on the part of plaintiff does not prevent recovery where the evidence otherwise establishes the overpayments were in fact a mistake.

Defendant argues that plaintiff had fiduciary duties to him, citing to various cases recognizing well operators may have such duties in certain circumstances. In particular, he relies on cases noting that fiduciary duties may arise where an operator's status is based on a unitization agreement, a fact which he somewhat belatedly asserts to be true here.[6] ENI Producing Properties Program LP 1982-I v. Samson Invest. Co., 977 P.2d 1086, 1088 (Okla. 1999) ("However, a well operator's fiduciary duty is not without boundaries; the duty is created by the unitization agreement."); Leck v. Continental Oil Co., 800 P.2d 224, 229

---

[6]*The parties' summary judgment submissions are silent as to any unitization agreement, but defendant's motion to reconsider the court's denial of his request for leave to amend [Doc. #59] alludes to that status.*

(Okla. 1990). However, even if a fiduciary relationship was deemed to exist here on some basis, whether by reason of unitization status or otherwise, none of the authorities cited by defendant indicate such a relationship would turn the operator into an insurer against good faith mistakes. As the various Oklahoma cases noted above (involving the recovery of overpayments in similar circumstances) make clear, if there is a genuine mistake of fact that causes overpayments, then the overpayments are recoverable.

Unjust enrichment is, of course, an equitable theory and there may be circumstances where it would be inequitable to permit recovery of overpayments made. However, defendant has not produced evidence suggesting any such circumstance here. There is no evidence suggesting bad faith or misconduct on plaintiff's part or suggesting any explanation for the overpayments other than an inadvertent, good faith mistake. Therefore, the court concludes plaintiff is entitled to judgment based on its unjust enrichment claim.

Marlin also seeks judgment based on a breach of contract theory, arguing Lurie took his interest subject to the terms of the operating agreement which provided that the parties would be paid according to their respective interests in the well. Defendant argues he is not bound by the operating agreement since he did not sign it and merely took his interests subject to it. As the court has concluded plaintiff is entitled to judgment based on unjust enrichment, it is unnecessary to determine whether the same result might be based on a breach of contract theory.

Plaintiff also asks for a declaratory judgment that it is entitled to withhold future production payments from Lurie until it has been fully repaid. In order to establish a basis

for declaratory judgment, a plaintiff must show that a controversy exists between the parties, that adverse legal interests are involved, that the controversy is immediate and real, and that the law supports the relief requested. Surefoot LC v. Sure Foot Corp., 531 F.3d 1236, 1240 (10th Cir. 2008). Plaintiff argues it is entitled to offset future runs based both on the language of the operating agreement (which grants a "first and preferred lien" to the operator securing all sums due from other parties) and based on Oklahoma law permitting setoff or recoupment as a means of recovering overpayments. Apart from the evidence or objections noted above as to recovery based on unjust enrichment, defendant has not responded to the request for declaratory judgment. In the circumstances existing here, and as Oklahoma law both authorizes the recovery of mistaken overpayments and applies principles of setoff and recoupment as a basis for collection of such amounts,[7] the court concludes the undisputed facts establish plaintiff's entitlement to a declaratory judgment as requested.

Finally, plaintiff requests summary judgment for prejudgment interest computed from April 2, 2009. Oklahoma law recognizes that prejudgment interest on overpayments may be recovered from the time demand for repayment, coupled with adequate supporting proof, is made. Shanbour, 864 P.2d at 817-18; 23 Okla. Stat. §6. Here, it is undisputed that plaintiff contacted defendant as to the overpayment and then followed up with written notice and supporting data on April 2, 2009. The necessary showing for recovery of prejudgment interest has been made. Plaintiff is entitled to recover prejudgment interest on $135, 625.35

---

[7]*See Shanbour, supra, affirming, in similar circumstances the trial court's judgment as to amounts owed after giving effect to overpayments partially recouped.*

from April 2, 2009, until date of judgment, at the rate of 6%. Cable v. State ex rel. Okla. Police Pension and Retirement Bd., 31 P.3d 392 (Okla. Civ. App. 2001) (interest rate applicable to 23 Okla. Stat. §6 is the legal rate of interest; 15 Okla. Stat. §266).

The court has considered defendant's motion to reconsider its award of a $750 attorney's fees to plaintiff in connection with defendant's motion to compel. That award was based on expansive and burdensome discovery requests having little, if any, connection to this case. The fact that defendant may have learned some relevant information from filing the motion to compel does not require a conclusion that fees are unjustified. The motion to reconsider will be denied.

## Conclusion

For the reasons stated, plaintiff's motion for summary judgment [Doc. #45] is **GRANTED**. Judgment will be entered in plaintiff's favor in the sum of $135,625.35 plus prejudgment interest thereon from April 2, 2009, to date of judgment. Plaintiff is entitled to offset future revenue payments otherwise due to Lurie from the Leonard No. 1 well against the amounts determined here. Defendant's motions to reconsider [Doc. Nos. 54 and 59] are **DENIED**.[8]

**IT IS SO ORDERED**.

Dated this 23rd day of July, 2010.

JOE HEATON
UNITED STATES DISTRICT JUDGE

---

[8]*Plaintiff's request for an award of the additional fees it incurred in responding to defendant's request for reconsideration is denied.*